UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ERIN R., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | CASE NO. C18-5869-TSZ-BAT <br><br> **REPORT AND RECOMMENDATION** |

Plaintiff Erin R. seeks review of the Commissioner's partially favorable decision denying her application for Disability Insurance Benefits ("DIB") while finding her eligible for Supplemental Security Income ("SSI"). She contends that the ALJ erred in evaluating the medical expert's testimony and in establishing the onset date of her disability. Dkt. 10. The Court recommends the Commissioner's decision be **AFFIRMED** and the case **DISMISSED** with prejudice.

## BACKGROUND

Plaintiff is currently 47 years old, has a high school education, and has worked as a claims clerk. Tr. 121, 160, 298. She applied for DIB in February 2014 and SSI in 2015, alleging disability as of September 1, 2012, in both applications; her date last insured for purposes of DIB was March 31, 2014. Tr. 36, 298, 300. After her applications were denied initially and on appeal,

REPORT AND RECOMMENDATION - 1

the ALJ conducted an initial hearing in April 2016 and a supplemental hearing in November 2016. Tr. 36. On December 9, 2016, the ALJ issued a partially favorable decision, finding plaintiff disabled beginning on April 21, 2014, but not disabled before that date. Tr. 36-50. The ALJ therefore found that plaintiff was eligible to receive SSI beginning on April 21, 2014, but, as she became disabled after her date last insured, her application for DIB was denied. *Id.* The Appeals Council denied plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. Tr. 3.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found that since the alleged onset date, plaintiff had not engaged in substantial gainful activity and she had the following severe impairments: degenerative disc disease of the lumbar and cervical spine and left carpal tunnel syndrome. Tr. 39. The ALJ found that prior to April 21, 2014, plaintiff did not have an impairment or combination of impairments that met or medically equaled the requirements of a listed impairment.[2] Tr. 41. The ALJ found that prior to April 21, 2014, plaintiff had the residual functional capacity to perform sedentary work with additional limitations. Tr. 42. The ALJ found that prior to April 21, 2014, plaintiff was capable of performing her past relevant work as a claims clerk, and, in the alternative, she was capable of performing other jobs that exist in significant numbers in the national economy. Tr. 46-47. The ALJ found that, beginning on April 21, 2014, the severity of plaintiff's impairments equaled the criteria of listing 1.04, disorders of the spine. Tr. 47. The ALJ therefore found that plaintiff was not disabled prior to April 21, 2014, but became disabled on that date. Tr. 49.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

# DISCUSSION

### A. Dr. Hanson's testimony

Plaintiff argues that the ALJ improperly rejected the opinion of the medical expert, Jeffrey Hanson, M.D. Dkt. 10 at 1. Dr. Hanson testified at the supplemental hearing in November 2016. The ALJ asked Dr. Hanson to address two time periods, the period from September 2012 through March 31, 2014, and the period beginning on April 1, 2014, and continuing through the date of the hearing. Tr. 150. Dr. Hanson testified that the latter time period was better documented in the record and, after discussing the imaging and examination findings from that time period, he opined that because of cervical stenosis, lumbar stenosis, and her various other medical problems, plaintiff was at a listing level of impairment during that time period. Tr. 150-52.

Dr. Hanson testified that the earlier time period was less documented in the record and that, while her impairments "didn't happen overnight," it wasn't "absolutely documentable from the record [during] that first timeframe that these problems were either diagnosed, recognized, or causing a lot of symptoms." Tr. 152-53. He opined that she was developing symptoms during that time period, but there was not enough evidence in the record to say with "absolute certainty" that plaintiff met or equaled a listing level impairment, although he stated: "I suspect between her neck and her lower back she did." *Id.* Tr.153. When the ALJ asked what RFC Dr. Hanson would give for the first timeframe, Dr. Hanson gave essentially the modified sedentary RFC the ALJ adopted in the decision. Tr. 154-55. Upon cross-examination, Dr. Hanson agreed that it was reasonable to presume that the conditions he identified as being present and symptomatic on April 1, 2014, were also present and symptomatic on March 31, 2014. Tr. 156.

The ALJ gave significant weight to Dr. Hanson's opinion, finding that as an expert witness, he had knowledge of the Social Security disability programs and access to the medical evidence of record when he testified, and that his opinion was consistent with the medical evidence, which showed minimal treatment and did not show the clinical signs and diagnostic imaging necessary to conclude that plaintiff's impairments met or equaled a listing before April 2014. Tr. 45. The ALJ gave great weight to Dr. Hanson's opinion of quite significant functional limitations before that date, finding that the limitations Dr. Hanson opined "generously accommodate" plaintiff's symptoms of pain and other stated limitations. *Id.*

Plaintiff argues that the ALJ improperly rejected Dr. Hanson's opinion that plaintiff's impairments medically equaled a listing before April 1, 2014. Dkt. 10 at 6. Her argument hinges on Dr. Hanson's testimony that while there was not enough evidence in the record to state with certainty that she equaled a listing at that time, he suspected she did. The ALJ did not discuss this statement in the decision, which plaintiff characterizes as rejecting a medical opinion without giving a reason. Dkt. 10 at 7.

The ALJ must give a valid reason for rejecting a medical opinion. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996). But the particular statement plaintiff identifies, taken in the context of Dr. Hanson's testimony as a whole, was not a "medical opinion" of the kind the ALJ must explicitly accept or reject. Rather, Dr. Hanson stated that he suspected plaintiff's impairments equaled a listing before April 2014 in the context of explaining the reasons why he could *not* give a definitive medical opinion about that time period—namely, that the medical evidence from that time was insufficient to support such an opinion. Dr. Hanson's suspicion was not a medical opinion and the ALJ was not required to treat it as such. The ALJ accounted for Dr. Hanson's testimony by adopting the functional limitations Dr. Hanson opined as to the

period before April 1, 2014. The fact that the ALJ did not recount this particular statement does not undermine the ALJ's assessment of Dr. Hanson's testimony as a whole. The ALJ's evaluation of Dr. Hanson's opinion was rational and this court may not disturb it. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

### B. Disability onset date

Plaintiff argues that the ALJ erred in determining the onset date of her disability. Dkt. 10 at 7. She asserts that an earlier onset date is reasonable and consistent with Dr. Hanson's testimony and the medical record. *Id.* at 8-9.

The ALJ is responsible for establishing the onset date of disability. Social Security Ruling 83-20.[3] In disabilities of nontraumatic origin, the ALJ must consider the claimant's allegations, work history, and the medical and other evidence concerning the impairment's severity. *Id.* The starting point is the claimant's alleged onset date, and the work history is frequently of great significance. *Id.* However, the medical evidence serves as the primary element in the onset determination. *Id.*

With slowly progressive impairments, it may be impossible to obtain medical evidence establishing the precise date an impairment became disabling. *Id.* In such a case, the ALJ must infer the onset date from the medical and other evidence, and should call on the services of a medical advisor to assist in the determination. *Id.* The established onset date "must be fixed based on the facts and can never be inconsistent with the medical evidence of record." *Id.* The ALJ must make an informed judgment based on the facts of the particular case, but this judgment

---

[3] SSR 83-20 was rescinded for cases filed on or after October 2, 2018 (*see* SSR 18-1; Fed. Reg. 49,613 p. 83), but still governs this case, which was filed before that date.

REPORT AND RECOMMENDATION - 5

must have a "legitimate medical basis" and the ALJ must give a "convincing rationale" for the date selected. *Id.*

Here, the ALJ considered the medical evidence, plaintiff's contemporaneous statements to her providers, and Dr. Hanson's testimony in establishing the onset date of plaintiff's disability. At a visit with her primary care provider on May 12, 2014, plaintiff complained of left arm pain and left hand numbness in all five fingers, with pins and needles tingling. Tr. 428. She also reported soreness in her neck and that "this all started 3 weeks ago." *Id.* Her provider found normal range of motion in all areas, but also found a mildly positive Tinel's sign and mild tenderness in the neck. Tr. 429.

On June 23, 2014, at a visit with a physiatrist, plaintiff reported neck, left arm, and back pain, which she stated had been worsening over the past couple of months. Tr. 1306. The physiatrist found very poor quality of movement within the cervical and lumbar spine, radicular symptoms extending down the left arm, positive Spurling's sign, and difficulty with transitional movements. *Id.* Back and neck MRIs taken in July 2014 showed significant degenerative changes, which Dr. Hanson opined were of listing level severity. Tr. 151-12, 1315-16.

The ALJ found that although these deficits were not recorded until the May 12, 2014, visit, the ALJ credited plaintiff's statement that these symptoms began three weeks before that examination, on April 21, 2014. Tr. 43. The ALJ also found that this timeframe was consistent with plaintiff's June 23, 2014, statement that her symptoms had been worsening over the last two months. *Id.* The ALJ therefore found that plaintiff's spine impairments met and otherwise equaled the severity of listing 1.04 as of April 21, 2014. *Id.* The ALJ concluded, however that before this date, the scant treatment evidence and lack clinical findings and imaging showed that plaintiff's condition was not quite at listing level severity. Tr. 43-44.

REPORT AND RECOMMENDATION - 6

Plaintiff argues that Dr. Hanson's testimony is consistent with an earlier onset date. Dkt. 10 at 8. She points to an example given in SSR 83-20, in which onset was established nine months before the only medical evidence in the file, based on a physician's statement that it was "reasonable to expect" certain limitations as of the claimant's alleged onset date. *Id.* Plaintiff argues that the example shows that medical certainty is not necessary to establish an onset date, and that Dr. Hanson's testimony—that it was reasonable to presume that plaintiff's impairments were present and symptomatic on March 31, 2014—was equivalent to the doctor's opinion in the example. *Id.* at 8-9. But this argument shows, at best, that the ALJ could have reasonably found that Dr. Hanson's testimony about the period before April 1, 2014, supported an earlier onset date. Such a showing, however, does not establish that the ALJ was unreasonable in making a different finding.

Plaintiff asserts that based on Dr. Hanson's testimony, it is "reasonable" and "consistent with the medical record" to conclude that plaintiff's conditions were of listing level severity as of March 31, 2014, which is just 21 days earlier than the date the ALJ found and one day earlier than the date Dr. Hanson stated his opinion was "definitive." Dkt. 10 at 9-10. Plaintiff also states that "it simply makes no sense" to find that plaintiff's conditions did not meet the listing as of March 31, 2014, because this date is not medically significant in any way, but instead is significant only because it makes the difference between plaintiff's claim for DIB being allowed or denied. Dkt. 10 at 9. But these arguments underscore the fault in plaintiff's position. SSR 83-20 requires the onset date to be fixed based on the facts and to have a legitimate medical basis. It also requires that the ALJ give a convincing rationale for the date selected. And yet plaintiff admits that the date she believes the ALJ should have found has no medical significance; the date plaintiff proposes is based on her desire to establish her disability before her date last insured for

REPORT AND RECOMMENDATION - 7

purposes of obtaining DIB. This is not a convincing rationale for a decision that must be made based on the medical evidence in the record.

Plaintiff may sincerely believe that the ALJ could have and should have found her disabled before her date last insured. But the ALJ determined the onset date based on the medical evidence, plaintiff's own contemporaneous statements to her providers, and Dr. Hanson's testimony. The ALJ's rationale—that plaintiff's own statements establish April 21, 2014, as the date her impairments worsened to listing level severity—is convincing in light of this evidence. The ALJ met the requirements of SSR 83-20 in determining the onset of plaintiff's disability. The court finds no error in the ALJ's determination of the onset date of plaintiff's disability.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **AFFIRMED** and the case be **DISMISSED** with prejudice.

A proposed order accompanies this Report and Recommendation. Any objection to this Report and Recommendation must be filed and served no later than **June 14, 2019**. If no objections are filed, the Clerk shall note the matter as ready for the Court's consideration on that date. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Objections and responses shall not exceed ten pages. The failure to timely object may affect the right to appeal.

DATED this 4th day of June, 2019.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge